**UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA**

---

ZENA ALSANABANI in her individual capacity and/or Executor of The Estate of Abdulmalek Anwar Alsanabani

                           Plaintiffs,

  -against-

SPEAR OPERATIONS GROUP, ABRAHAM GOLAN, Reflex Responses Management Consultancy LLC d/b/a Reflex Response Security Consultants and ERIK PRINCE and the First Abu Dhabi Bank USA N.V. and JOHN DOE 1-100, ABC Corporation 1-100.

                     Defendants.

Case No. 1:25-cv-01684-JDB

---

**REPLY IN FURTHER SUPPORT OF DEFENDANT FIRST ABU DHABI BANK USA
N.V.'S MOTION TO DISMISS**

**TABLE OF CONTENTS**

I.    THE OPPOSITION CONFIRMS THERE ARE NO PLAUSIBLE
ALLEGATIONS THAT FAB USA'S ROUTINE BANKING SERVICES
CAUSED OR WERE EVEN CONNECTED TO MR. ALSANABANI'S DEATH ..........2

    A.    Plaintiff Recycles the Same Insufficient Conclusory Allegations...........................2

    B.    FAB USA Provided Routine Banking Services, Not Terrorist Financing...............4

    C.    Plaintiff is Not Entitled to "Modest Discovery" To Attempt to Plead a
Claim ..................................................................................................................5

II.   THE SAC FAILS TO PLAUSIBLY ALLEGE FAB USA'S KNOWLEDGE OR
INTENT ................................................................................................................6

    A.    Vague, Unrelated Media Reports, Without More, Cannot Establish the
Required Scienter.................................................................................................6

    B.    Plaintiff Misstates the Standard Set Forth in *Atchley* ................................................9

III.  PLAINTIFF CANNOT RELY ON INNUENDO REGARDING THE
NATIONALITY OF MR. ALSANABANI WHERE THAT FACT IS READILY
AVAILABLE TO  PLAINTIFF ...............................................................................10

IV.   PLAINTIFF'S ARGUMENTS ATTEMPTING TO LINK MR. ALSANABANI'S
MURDER TO ALLEGED INTERNATIONAL TERRORISM ARE
IMPLAUSIBLE...................................................................................................11

V.    THIS COURT CANNOT READ OUT THE STATUTORY REQUIREMENT
THAT LIABILITY FOR CLAIMS 1, 2, AND 4 REQUIRES A DESIGNATED
FOREIGN TERRORIST ORGANIZATION.......................................................13

VI.   PLAINTIFF'S ARGUMENTS CANNOT SAVE THE TORTURE VICTIM
PROTECTION ACT CLAIM WHERE SETTLED SUPREME COURT
PRECEDENT BARS THAT CLAIM ....................................................................14

VII.  THE SAC SHOULD BE DISMISSED WITH PREJUDICE WITHOUT
FURTHER AMENDMENT ..................................................................................15

CONCLUSION....................................................................................................16

## TABLE OF AUTHORITIES

### Cases

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..............................................................................................................3, 12

*Atchley v. AstraZeneca UK Ltd.*,
165 F.4th 592 (D.C. Cir. 2026)...........................................................................................4, 9, 10

*Bastin v. Fed. Nat. Mortg. Ass'n*,
104 F.3d 1392 (D.C. Cir. 1997)...................................................................................................5

*Belizan v. Hershon*,
434 F.3d 579 (D.C. Cir. 2006) ..................................................................................................15

*Doe I v. Cisco Sys., Inc.*,
73 F.4th 700 (9th Cir. 2023), *cert. granted sub nom. Cisco Sys., Inc. v. Doe I*,
No. 24-856 (U.S. Jan. 9, 2026) ..................................................................................................15

*Hardt v. Reliance Standard Life Ins. Co.*,
560 U.S. 242 (2010) ...................................................................................................................14

*Kaplan v. Lebanese Canadian Bank, SAL*,
999 F.3d 842 (2d Cir. 2021) .........................................................................................................8

*Kellogg Brown & Root Servs., Inc. v. United States*,
99 Fed. Cl. 488 (2011), *aff'd*, 728 F.3d 1348 (Fed. Cir. 2013) ..................................................5

*Miller v. James*,
751 F. Supp. 3d 21 (N.D.N.Y. 2024), *aff'd*, No. 24-2785, 2025 WL 1085815
(2d Cir. Apr. 9, 2025), *cert. denied*, 223 L. Ed. 2d 274 (Dec. 8, 2025)....................................12

*Mohamad v. Palestinian Auth.*,
566 U.S. 449 (2012) ...................................................................................................................14

*Ofisi v. BNP Paribas, S.A.*,
77 F.4th 667 (D.C. Cir. 2023)..................................................................................................2, 3

*Owens v. BNP Paribas S.A.*,
235 F. Supp. 3d 85 (D.D.C. 2017), *aff'd* 897 F.3d 266 (D.C. Cir. 2018) ..................................4

*Ross v. Blake*,
578 U.S. 632 (2016) ...................................................................................................................14

*Ross v. Lockheed Martin Corp.*,
2020 WL 4192566 (D.D.C. July 21, 2020) ................................................................................5

*Twitter, Inc. v. Taamneh*,
  598 U.S. 471 (2023) ..........................................................................................................4

## Statutes

18 U.S.C. § 1101..............................................................................................................10

18 U.S.C. § 2339..............................................................................................................13

18 USC § 2331..............................................................................................................11, 13

18 USC § 2333............................................................... 1, 2, 7, 9, 10, 11, 13, 14

18 USC § 1350................................................................................. 1, 2, 14, 15

**ARGUMENT**

Far from offering any argument that would warrant denial of First Abu Dhabi Bank USA N.V.'s ("FAB USA") motion to dismiss the Second Amended Complaint ("SAC"), Plaintiff Zena Alsanabani's ("Plaintiff") Opposition, ECF 31 ("Opp."), instead confirms that dismissal is required. Plaintiff concedes that three of her claims require an allegation that FAB USA assisted a foreign terrorist organization ("FTO") but also concedes that the SAC alleges no such FTO. Plaintiff concedes that Supreme Court precedent expressly bars her claim under the Torture Victim Protection Act ("TVPA"), but asks this Court to disregard that binding case law. Plaintiff further concedes that the *only* allegations supporting its claim that FAB USA was aware it was allegedly supporting terrorist acts are references to vague media reports that do not even relate to terrorism. And Plaintiff asks this Court to save claims under the Anti-Terrorism Act ("ATA") by substituting innuendo for what ought to have been a straightforward allegation of Mr. Alsanabani's nationality. Each of these desperate arguments only confirm the plain infirmities of Plaintiff's claims and the insufficiency of the SAC's allegations.

The Opposition's lengthy arguments attempting to explain and justify the attenuated alleged connections between FAB USA and Mr. Alsanabani's death also reveal the SAC's deficiencies. Although the Opposition attempts to characterize the causal chain between FAB USA and Mr. Alsanabani's death as "direct," the actual allegations are anything but. Indeed, the Opposition glosses over the SAC's allegations of a causal chain that includes at least four (but possibly more) links, none of which are supported by *any* factual allegations, let alone plausible ones. Thus, the Court is left with vague, conclusory allegations that the UAE government used FAB USA's banking services to transfer some unidentified funds at unidentified times to private military contractors, those private military contractors allegedly provided unspecified training at

1

unspecified times for a group in Yemen, and another group in Yemen vaguely affiliated with that first group killed Mr. Alsanabani.  This causal chain is too attenuated, too conclusory, and too implausible to sustain Plaintiff's claims.

The SAC, despite already being twice amended, fails to state a claim under either the ATA or the TVPA, and the Court should dismiss it with prejudice.

## I.    THE OPPOSITION CONFIRMS THERE ARE NO PLAUSIBLE ALLEGATIONS THAT FAB USA'S ROUTINE BANKING SERVICES CAUSED OR WERE EVEN CONNECTED TO MR. ALSANABANI'S DEATH

### A.    Plaintiff Recycles the Same Insufficient Conclusory Allegations

Plaintiff's Opposition does nothing to cure the causation deficiencies identified in FAB USA's Motion to Dismiss.  Plaintiff concedes that proximate causation is a required component of an ATA claim. Opp. at 9; *Ofisi v. BNP Paribas, S.A.*, 77 F.4th 667, 677 (D.C. Cir. 2023) (confirming that ATA claims require proximate cause).  But at bottom, Plaintiff does not plausibly allege actual or proximate causation.  Instead, Plaintiff's entire causation theory is based on barebones and disjointed assertions: (1) that FAB USA processed some unspecified transactions for the UAE government; (2) that funds were "channeled" to Spear Operations Group ("SOG") and Reflex Response Security Consultants ("RRSC"); (3) that SOG and RRSC provided unspecified "command structure and training" to unnamed armed groups; and (4) that soldiers from another group, Security Belt Forces, detained and murdered Mr. Alsanabani. SAC ¶¶ 25, 66, 74, 83.  Based on these disconnected allegations, and without any actual explanation, Plaintiff baldly asserts that, but for the funds transferred by FAB USA, Mr. Alsanabani would be alive today. *Id.* ¶ 83.  Tracing this chain as Plaintiff actually alleges it the SAC does not allege a direct or foreseeable chain of events, but makes a collection of disjointed, vague allegations connected only by unsustainable inferences linking a routine banking transaction to a killing through at least four intermediate actors and relationships, none of which is concretely alleged. No matter how

2

many times Plaintiff repeats these conclusory allegations that FAB USA's banking services caused Mr. Alsanabani's death in slightly varied formulations, her assertions continue to lack the supporting concrete factual allegations that are required to support plausible claims. *See Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009) (conclusory allegations "not entitled to be assumed true").

The Opposition's claim that FAB USA has somehow alleged a more "direct fund path" than the allegations the D.C. Circuit ruled were insufficient in *Owens* or *Ofisi*, Opp. at 15, is similarly misguided. In *Owens v. BNP Paribas, S.A.*, "the complaint allege[d] that the Sudanese banks transmitted the funds from [the defendant bank] directly to al Qaeda, and that these funds from BNPP were necessary for al Qaeda to carry out the embassy bombings." 897 F.3d 266, 276 (D.C. Cir. 2018) (citations omitted). The D.C. Circuit nevertheless ruled that the complaint did not adequately allege proximate causation because it did not contain any "nonconclusory allegation … that plausibly shows that the moneys [the defendant bank] transferred … were in fact sent to [the terrorist group] or that" the terrorist attack could not have been funded without the alleged transfers. *Id.* The D.C. Circuit further noted that the need for allegations of a substantial connection between the transfers and the alleged terrorist act was "all the more acute" because, like here, one of the participants in the alleged funding scheme was a sovereign government with "many legitimate agencies, operations, and programs to fund." *Id.* And in *Ofisi v. BNP Paribas, S.A.*, the plaintiff alleged that the defendant bank made transfers directly to a Sudanese bank at which Osama bin Laden and al-Qaeda had accounts. 77 F.4th 667, 670 (D.C. Cir. 2023). The D.C. Circuit again affirmed dismissal because the complaint failed to plausibly allege "a flow of money" from the defendant bank "that injured them." *Id.* at 679. Even more so than in *Owens* and *Ofisi*, the allegations in the SAC are tortuous and attenuated, failing to allege any concrete

3

connection between the alleged financial transactions and the harm to the Plaintiff, so the claims must be dismissed.

Plaintiff's reliance on *Atchley v. AstraZeneca UK Ltd.*, 165 F.4th 592 (D.C. Cir. 2026), also fails. Opp. at 19. Although the Opposition correctly notes that the *Atchley* court rejected a "strict nexus" requirement, *id.*, the court nonetheless noted that the Supreme Court in *Twitter, Inc. v. Taamneh*, 598 U.S. 471 (2023), rejected an argument that Google provided financial assistance to a terrorist group because the allegations did not include "sufficient detail about the substantiality of the financial assistance, such as the amount and frequency of the revenue sharing." *Atchley*, 165 F.4th at 606. The court ruled the nexus requirement was satisfied only "because the complaint's allegations describe how defendants provided tailored, local assistance to [the terrorist group] at the time and in the immediate vicinity" of the alleged terrorist attack. *Id.* at 607. Here, the SAC contains no such detailed allegations—or any allegations at all—of specific, tailored local assistance linked to the death of Mr. Alsanabani, so the SAC should be dismissed.

### B.    FAB USA Provided Routine Banking Services, Not Terrorist Financing

Plaintiff's arguments further fail because despite the Opposition's sleight of hand, *see, e.g.*, Opp. at 6 (purporting to summarize SAC allegations that alleged bad actors were "funded by Defendants"), this case does not involve allegations that FAB USA actually provided funding to any group, terrorist or otherwise. "Processing funds for [a country] is not the same as processing funds for a terrorist organization or a terrorist front." *Owens v. BNP Paribas S.A.*, 235 F. Supp. 3d 85, 99 (D.D.C. 2017), *aff'd* 897 F.3d 266 (D.C. Cir. 2018). FAB USA is alleged to have processed ordinary dollar-denominated financial transactions for a sovereign government of a close U.S. ally. SAC ¶¶ 25, 33, 66. Even more than the government of Sudan, which the D.C. Circuit considered in *Owens* and had been designated by the U.S. government as a state sponsor of terrorism, the UAE Government has "many legitimate agencies, operations, and programs to

4

fund." *Owens*, 897 F.3d at 276.  There is no allegation that FAB USA itself provided funds to any militia, mercenary organization, or armed group. There is no allegation that FAB USA designed, directed, or had visibility into how the UAE deployed its own funds after they were processed. Plaintiff's attempt to conflate routine correspondent banking services with terrorism financing cannot withstand scrutiny or sustain the SAC.

    **C.**    **Plaintiff is Not Entitled to "Modest Discovery" To Attempt to Plead a Claim**

In apparent recognition of the deficiencies of the SAC, Plaintiff pivots and seeks "modest" discovery to determine the plausibility of her complaint.  Opp. at 12. This request turns the litigation process on its head, seeking to embark on a fishing expedition into FAB USA's records before even being able to meet the minimal pleading requirements of the Federal Rules of Civil Procedure, *Iqbal* and *Twombly*, and the Court should reject it.

*First*, this argument is unsupported by any persuasive case law.  Plaintiff cites only out-of-Circuit cases and one unreported D.C. District Court decision.  And that one in-Circuit case, *Garcia v. Skanska U.S.A. Bldg. Inc.*, does not even support Plaintiff's argument.  There, the court did not even confirm that it **had authority** to grant limited discovery and ultimately denied the plaintiff's request, as discovery would be "unnecessary to resolve the motion to dismiss."  2017 U.S. Dist. LEXIS 180651, \*6-9.  Here too, Plaintiff seeks to investigate in an effort to create links that she cannot plead because they do not exist.  Courts regularly reject such requests to conduct fishing expeditions in aid of stating a claim.  *See, e.g.*, *Ross v. Lockheed Martin Corp.*, 2020 WL 4192566, at \*9 (D.D.C. July 21, 2020) ("pre-certification discovery is not an opportunity to engage in a 'fishing expedition'"); *Kellogg Brown & Root Servs., Inc. v. United States*, 99 Fed. Cl. 488, 495 (2011), *aff'd*, 728 F.3d 1348 (Fed. Cir. 2013), *opinion corrected on denial of reh'g*, 563 F. App'x 769 (Fed. Cir. 2014) (confirming that pleadings must "allege sufficient underlying facts" and preventing use of "discovery as a fishing expedition") (citation omitted); *Bastin v. Fed. Nat.*

*Mortg. Ass'n*, 104 F.3d 1392, 1396 (D.C. Cir. 1997) ("The district court does not abuse its discretion when it denies a discovery request that would amount to nothing more than a fishing expedition.").

*Second*, and more fundamentally, Plaintiff misapprehends the nature of the deficiencies that doom her SAC. Plaintiff does not allege facts that would become clearer or more specific with more information, as she alleges no relevant facts at all regarding the critical links in her alleged causal chain—that is, links between the UAE and SOG/RRSC, links between SOG/RRSC and STC, links between anyone and the Security Belt Forces soldiers who killed Mr. Alsanabani, or, critically, links between FAB USA and any of the alleged people or groups who allegedly killed Mr. Alsanabani. No review of FAB USA's transaction records or diligence questionnaires would supply what is actually missing: any basis to allege that funds the UAE government transferred through FAB USA had any connection to the Security Belt Forces soldiers at the checkpoint, or that the killing bore any connection to FAB USA's banking services. These are not gaps that discovery can fill; they are the foundational allegations Plaintiff was required to make before filing suit but has failed at three times. No discovery is therefore warranted or appropriate.

## II.    THE SAC FAILS TO PLAUSIBLY ALLEGE FAB USA'S KNOWLEDGE OR INTENT

### A.    Vague, Unrelated Media Reports, Without More, Cannot Establish the Required Scienter

Plaintiff's Opposition makes clear that her allegations of FAB USA's knowledge and intent rely solely on "extensive news coverage detailing abuses," from which FAB USA allegedly "knew or had reason to know" the funds it transferred would be used for terrorism. SAC ¶ 89; Opp. 16-17. The Opposition purports to summarize this supposed coverage, pointing to congressional inquiries, Amnesty International reports, and a UN Panel of Experts reports that allegedly documented UAE mercenary activity in Yemen. Opp. at 17-18.

These allegations are insufficient for several independent reasons.

*First*, the media and advocacy reports Plaintiff cites are overwhelmingly generic accounts of the UAE's broader role in the Yemeni civil war.  For example, several paragraphs of the SAC are drawn wholesale from news articles describing the UAE's general influence in Yemen after its nominal military withdrawal, SAC ¶¶ 49-51, and its recruitment of mercenaries in the region, *id.* ¶¶ 52-59, neither of which has any bearing on what FAB USA knew about the end use of any funds it transferred.  A bank cannot be charged with constructive knowledge of terrorism financing simply because a client country's military activities writ large have attracted press coverage. Under such a standard, financial institutions would face ATA liability for processing transactions for virtually every government involved in armed conflict anywhere in the world.

*Second,* many of the public sources Plaintiff references do not describe terrorist acts at all or, if they do, terrorist acts by any of the groups involved here, and therefore cannot support an inference that FAB USA knew the funds it transferred might be used to support terrorism. The SAC, for example, gestures vaguely at "numerous international human rights organizations" that "questioned the legality" of SOG's and RRSC's operations. SAC ¶ 26.  This formulation is so imprecise that it provides no basis for any inference about FAB USA's knowledge.  Allegations that unspecified organizations "questioned the legality" of unspecified conduct do not establish that FAB USA knew or should have known it was facilitating terrorism.  Similarly, Plaintiff points to letters from U.S. Senators, including Bob Menendez, calling for "investigations" into SOG's activities in Yemen. SAC ¶ 7.  But a congressional demand generically calling for an investigation into unspecified actions is far from a finding of terrorist activity.  If anything, the fact that the U.S. government, despite its enormous resources, had not yet reached conclusions about SOG's conduct

*undermines* Plaintiff's claimed inference that FAB USA should have known its transfers of funds from the UAE government to that group might be used to facilitate terrorism.

*Third*, and critically, even the cases Plaintiff cites do not stand for the proposition that generic press coverage is sufficient to establish a bank's scienter under the ATA. Opp. at 21-22. In *Ashley v. Deutsche Bank*, the court did observe that plaintiffs "typically seek to establish a bank's awareness" through public sources. 144 F.4th 420, 438 (2d Cir. 2025). But the court did not rely on such public sources in ruling that the bank in *Ashley* had general awareness that the companies it was providing services to were supplying bombmaking materials to terrorists. *Id.* 439-40.  Instead, the court specifically noted that the bank became aware of its involvement in the terrorist acts when a U.S. general met with the bank and expressly told it that "the [bank customers'] product was the source for the explosive materials used by the [terrorist group]; that [bombs using the product] had caused about 80 percent of all American bomb casualties in Afghanistan; that the [bank customers] had refused to cooperate with efforts to prevent individuals from smuggling [the product] into Afghanistan; and that [the bank's] services were crucial to allow the [bank customers] to produce the amount of fertilizer necessary to 'sustain' the [terrorists] attacks." *Id.* at 440.  *Ashley* thus provides no support for Plaintiff's argument that vague media articles alone can support allegations of knowledge by FAB USA.

Plaintiff's reliance on *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842 (2d Cir. 2021), is likewise misplaced. Opp. at 22.  In *Kaplan*, the complaint alleged that the defendant bank had provided banking services to Hizbollah and certain individuals and entities that were "integral parts" of Hizbollah. *Kaplan*, 999 F.3d at 862.  In ruling that the allegations of the bank's awareness that its services to Hizbollah were facilitating terrorism were sufficient, the Second Circuit relied on (1) the U.S. government's designation of Hizbollah as an FTO ten years before the alleged

8

attack; (2) repeated public statements by Hizbollah itself openly acknowledging that it was carrying out terrorist attacks for two decades before the alleged attack; (3) public statements by Hizbollah for years before the alleged attack specifically stating that individuals and entities that were the bank's customers were "integral constituent parts of Hizbollah." *Id.* at 864. The SAC here contains nothing approaching any of these allegations, instead relying only on vague media articles questioning or at most disapproving of generic actions by the UAE, SOG, and RRSC.

Thus, unlike in *Ashley* and *Kaplan*, there are no allegations that could support an inference that FAB USA was aware that its services were facilitating terrorist acts, so the SAC must be dismissed.

## B.    Plaintiff Misstates the Standard Set Forth in *Atchley*

Plaintiff relies extensively on the D.C. Circuit's recent decision in *Atchley* for the proposition that the nexus and scienter required for aiding and abetting liability under the ATA is less demanding in financial assistance cases. Opp. at 19-20, 24.

But Plaintiff reads *Atchley* too broadly and in a manner that cannot be reconciled with the Supreme Court's recent decision in *Taamneh v. Twitter* or with the facts alleged here. In *Atchley*, the D.C. Circuit considered allegations that defendant pharmaceutical and medical equipment manufacturers knowingly provided cash bribes and free goods to a terrorist group. *Atchley*, 165 F.4th at 596-97. Thus, the *Atchley* court addressed a unique scenario in which the "defendants, over a long period of time, associated themselves with [a party's] violent campaign of terrorism against U.S. nationals in Iraq via their provision of meaningful quantities of cash and cash-equivalents to that terrorist organization." *Id.* at 613. The court specifically noted that the complaint alleged an "active, direct, and particularized" and "voluntary, tailored" relationship between the defendants and the terrorist group. *Id.* at 612-13. Based on the pervasiveness of this

9

relationship, the court ruled that the complaint adequately alleged facts supporting an inference that the defendants culpably associated themselves with the terrorist group. *Id.*

The Plaintiff's effort to broaden *Atchley* to the circumstances here fails. First, the SAC's allegations come nowhere near those in *Atchley*. Far from specifically alleging a years-long pattern of conduct that closely aligned the *Atchley* defendants with the terrorist group, the SAC only vaguely alleges that FAB USA performed financial transactions between the UAE government (a legitimate government and U.S. ally) and SOG/RRSC (legitimate private military contractors) with nothing connecting those transactions or FAB USA to any terrorist acts. Second, the allegations in the SAC far more closely resemble the arms-length, routine transactions that the Supreme Court ruled constituted insufficient allegations of knowledge in *Twitter v. Taamneh*; *see also Atchley*, 165 F.4th at 613 (relying on the "voluntary, tailored relationship" between the defendants and the terrorist group to distinguish the circumstances in that case from *Taamneh*). Plaintiff's reliance on *Atchley* is therefore unpersuasive, and the Court should dismiss the SAC for failure to adequately allege knowledge on the part of FAB USA.

## III. PLAINTIFF CANNOT RELY ON INNUENDO REGARDING THE NATIONALITY OF MR. ALSANABANI WHERE THAT FACT IS READILY AVAILABLE TO PLAINTIFF

Plaintiff concedes that ATA claims can only be brought by a U.S. national, which includes either a U.S. citizen or other person who "though not a citizen of the United States, owes permanent allegiance to the United States." Opp. at 26 (quoting 8 U.S.C. § 1101(a)(22)). Despite these clear statutory categories and the fact that Plaintiff, as Mr. Alsanabani's sister, would readily possess information regarding which, if any, of these categories Mr. Alsanabani fell into, the SAC includes no such allegation. Instead, the Opposition seeks to rely on circuitous, indirect allegations about what soldiers at a checkpoint in Yemen believed about Mr. Alsanabani, Mr. Alsanabani's residence, and the type of currency Mr. Alsanabani was carrying to meet this statutory requirement.

10

Opp. at 25-26 (citing SAC ¶¶ 8, 67, 70). But none of these round-about allegations gives rise to a plausible inference of what should be a straight-forward fact within the Plaintiff's knowledge. Indeed, Plaintiff's reliance on allegations amounting to innuendo for such a simple, demographic fact instead implies that it is not true and Mr. Alsanabani was not, in fact, a U.S. national. The Court should not endorse this effort to use creative pleading to obfuscate the truth and should dismiss Counts 1 through 4 to the extent they are brought on behalf of Mr. Alsanabani or his estate.[1]

## IV.  PLAINTIFF'S ARGUMENTS ATTEMPTING TO LINK MR. ALSANABANI'S MURDER TO ALLEGED INTERNATIONAL TERRORISM ARE IMPLAUSIBLE

Plaintiff argues that the SAC sufficiently alleges that Mr. Alsanabani's murder was an act of international terrorism based on generic factual allegations, a conclusory statement by a third party, and vague, implausible, and conclusory allegations of intimidation and coercion. Opp. at 28-29. These arguments are unavailing.

*First*, Plaintiff points to factual allegations relating to the affiliation of the soldiers who allegedly murdered Mr. Alsanabani and the allegation that those soldiers targeted Mr. Alsanabani because they believed him to be from the United States and he was carrying U.S. dollars. *Id.* (citing SAC ¶¶ 67-74). But neither the SAC nor the Opposition makes any plausible connection between these facts and the requirement under the ATA that an "act of international terrorism" be one intended to "intimidate or coerce a civilian population," "influence the policy of a government by intimidation or coercion," or "affect the conduct of a government." 18 USC § 2331(1). In fact, to the extent the SAC and Opposition attempt to address those statutory requirements, they only

---

[1]  Plaintiff's argument that FAB USA's motion on this ground should be denied because she is a U.S. citizen and can bring her own claims is a non sequitur. *See* Opp. at 27. FAB USA's motion to dismiss only sought dismissal on this ground of Claims 1-4 "to the extent they are brought on behalf of" Mr. Alsanabani's estate, not claims brought directly by Plaintiff. ECF 30-1 at 20.

11

confirm the deficiency of the allegations.  For example, the Opposition argues that the alleged terrorist motivation was to support "UAE's separatist policies in Yemen and its control over resources."  Opp. at 29.  But Plaintiff does not even offer argument, let alone well-pled facts, linking the alleged murder of a person traveling from the United States to this motivation.  The SAC thus fails to allege an international act of terrorism.

*Second*, Plaintiff's reliance on a media report asserting that a Yemeni military analyst referred to Mr. Alsanabani's killing as "a condemned terrorist act" is of no moment. Opp. at 28 (citing SAC ¶ 74).  That analyst's statement, like the SAC, lacks any concrete factual allegations that can satisfy the statutory definition of an act of international terrorism.  Indeed, it is precisely the type of conclusory statement that courts disregard at the motion to dismiss stage.  *Iqbal*, 556 U.S. at 681 (conclusory allegations are "not entitled to be assumed true").  Disregarding the conclusory allegation here is all the more appropriate where the conclusion—that the murder was "terrorist"—relies on a term that is regularly used colloquially in ways that deviate significantly from its legal meaning.  *See, e.g.*, *Miller v. James*, 751 F. Supp. 3d 21, 41–42 (N.D.N.Y. 2024), *aff'd*, No. 24-2785, 2025 WL 1085815 (2d Cir. Apr. 9, 2025), *cert. denied*, 223 L. Ed. 2d 274 (Dec. 8, 2025) (references to anti-abortion activists as "terrorists" "are best understood as a colloquial use of the word "terrorist," rather than as an accusation of criminal conduct).  The Court should thus afford no credence to a third-hand report of an analyst's fact-free characterization.

*Third*, Plaintiff argues that Mr. Alsanabani's murder took place "in the context of a broader campaign of violence intended to intimidate civilians and influence government policy."  Opp. at 28 (citing SAC ¶¶ 82, 84).  But here too, the actual allegations in the SAC reveal the deficiency of the pleading.  Paragraph 84 alleges that the UAE, SOG, RRSC, and other groups are "dedicated to the destruction of opponents within the State of Yemen" and use violence "to pressure Yemen to

cede territory to the UAE or factions it favors." SAC ¶ 84. But despite the Opposition's argument that this "context" renders Mr. Alsanabani's murder an act of international terrorism, the SAC nowhere alleges any connection between the murder and any of these alleged goals. Without such allegations, the SAC does not plausibly allege that Mr. Alsanabani's murder was intended to coerce a population or influence a government as the statute requires. 18 USC § 2331(1). The ATA claims must therefore be dismissed.

## V. THIS COURT CANNOT READ OUT THE STATUTORY REQUIREMENT THAT LIABILITY FOR CLAIMS 1, 2, AND 4 REQUIRES A DESIGNATED FOREIGN TERRORIST ORGANIZATION

Plaintiff admits that Claims 1 and 2 require, as a statutory element, that FAB USA aided and abetted or conspired with a designated FTO. Opp. at 30. Plaintiff's argument that Claim 4 asserts a claim under 18 U.S.C. § 2339A and therefore does not require allegations related to a designated FTO is inconsistent with the SAC itself, which plainly alleges that Claim 4 is for a violation of 18 U.S.C. § 2339B(a)(1). *Compare* Opp. at 31 *with* SAC ¶ 33. And Section 2339B only imposes liability on a person who provides material support "to a foreign terrorist organization." 18 U.S.C. § 2339B(a)(1). Claims 1, 2, and 4 thus each require a plausible allegation that FAB USA aided, conspired with, or materially supported a designated FTO. Because the SAC does not, and cannot, contain such an allegation, those claims must be dismissed.[2] Each of Plaintiff's arguments to the contrary fails.

*First*, Plaintiff points to two tangential references to al Qaeda in the SAC as sufficient to satisfy the FTO requirement. Opp. at 30 (citing SAC ¶¶ 12, 95). But the actual pleadings relating to al Qaeda reveal their utter insufficiency. Paragraph 12 of the SAC alleges that the UAE's role

---

[2]  Plaintiff's argument that Claim 3 does not require an allegation of an FTO is, again, a non sequitur. Opp. at 31. FAB USA only advanced this argument for the dismissal of Claims 1, 2 and 4. ECF 30-1 at 22.

13

in the war in Yemen "has created more space for extremist groups like" al Qaeda.  SAC ¶ 12.  And paragraph 95 alleges that "Amnesty International reported in February 2019 that the UAE was supplying a large amount of weaponry … to a variety of militia, including some accused of war crimes and linked to al Qaeda."  *Id.* ¶ 95.  Neither of these allegations include any factual matter (1) making any connection between FAB USA and al Qaeda; (2) making any connection between SOG or RRSC and al Qaeda; (3) making any connection between al Qaeda and Mr. Alsanabani's death; or (4) even alleging that the UAE—or any other group or company identified in the SAC— actually provided funds or support to al Qaeda (or any other FTO).  Plaintiff cannot save the SAC from this plain statutory deficiency merely by mentioning an unrelated FTO.

*Second*, Plaintiff argues that this Court should ignore the plain statutory text of the ATA based on a statement of the Act's purpose. Opp. at 31. Plaintiff unsurprisingly provides no support for this argument, as it runs afoul of the fundamental tenet of statutory interpretation: it "begins with the text."  *Ross v. Blake*, 578 U.S. 632, 638 (2016).  The Court "must enforce plain and unambiguous statutory language according to its terms." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 251 (2010).  Here, the statutory text is plain and unambiguous: Sections 2333(d) and 2339B only impose liability for assistance or support to designated FTOs.  Plaintiff has not alleged that FAB USA had any interactions *at all* with any designated FTO, so Claims 1, 2, and 4, relying on those statutes, must be dismissed.

## VI.    PLAINTIFF'S ARGUMENTS CANNOT SAVE THE TORTURE VICTIM PROTECTION ACT CLAIM WHERE SETTLED SUPREME COURT PRECEDENT BARS THAT CLAIM

Plaintiff admits that binding Supreme Court precedent bars Claim 5: the Torture Victim Protection Act ("TVPA") only provides a right of action against individuals, not against companies like FAB USA. Opp. at 32; *see Mohamad v. Palestinian Auth.*, 566 U.S. 449, 455-56, 461 (2012).

14

But she asks the Court to disregard this binding precedent because, the Opposition argues, the Supreme Court may revisit that precedent. *Id.* This is not so.

In *Cisco Sys. v. Doe*, the Supreme Court granted *certiorari* to consider the question of whether the TVPA "allows a judicially implied private right of action for aiding and abetting." *Doe I v. Cisco Sys., Inc.*, 73 F. 4th 700 (9th Cir. 2023), *cert. granted sub nom. Cisco Sys., Inc. v. Doe I*, No. 24-856 (U.S. Jan. 9, 2026). But the answer to that question has no bearing on the status of *Mohamad* as binding precedent. In fact, the TVPA claim at issue in *Cisco* was only brought against individual defendants, so the Court would have no reason to reconsider its holding in *Mohamad*. *See Doe I v. Cisco Sys., Inc.*, 73 F.4th 700, 709 (9th Cir. 2023) (TVPA claim brought against two Cisco executives, not the company). Indeed, none of the litigants in *Cisco* has called for the overturning of *Mohamad*, nor has the Supreme Court indicated that it is considering overturning that relatively recent precedent. *Mohamad* remains—and will remain—binding Supreme Court precedent: the TVPA does not provide for a cause of action against corporate defendants like FAB USA, and Claim 5 must be dismissed

## VII.    THE SAC SHOULD BE DISMISSED WITH PREJUDICE WITHOUT FURTHER AMENDMENT

Plaintiff's argument that she should be allowed to further amend her complaint should be rejected. Opp. at 37. The characterization of the first amendment as a mere "technical mistake" is irrelevant. *Id.* 7 n.3. Whatever the reason, Plaintiff has now had three opportunities to plead a viable claim against FAB USA—including one amendment Plaintiff made in response to FAB USA's first motion to dismiss and purportedly intended to address deficiencies identified by that motion, ECF 27 at 9-10—and has failed each time. Any further amendment here is futile because the missing allegations are foundational facts that would need to already exist in order for Plaintiff's claims to survive. No further amendment could cure, for instance, that Mr. Alsanabani

15

was not a U.S. national; that SOG, RRSC, STC, or Security Belt Forces are not designated FTOs; and that Mr. Alsanabani's robbery and murder was not an act of international terrorism. Plaintiff has not properly alleged these facts across three complaints, nor will she ever. Dismissal with prejudice is therefore appropriate here. *See Belizan v. Hershon*, 434 F.3d 579, 583 (D.C. Cir. 2006) ("Dismissal with prejudice 'operates as a rejection of the plaintiff's claims on the merits.'" (quotation omitted)).

## CONCLUSION

For the above reasons, the claims against FAB USA should be dismissed in their entirety with prejudice.

16

DATED: March 16, 2026

**QUINN EMANUEL URQUHART
& SULLIVAN, LLP**

*/s/ Juan P. Morillo*
Juan P. Morillo (DC Bar No. 475196)
Nicholas J. Inns (DC Bar No. 1722110)
Katherine Schroeder (DC Bar No. 90001250)
555 13th Street NW, Suite 600
Washington, D.C., 20004
Telephone: (202) 538-8000
juanmorillo@quinnemanuel.com
nicholasinns@quinnemanuel.com
katherineschroeder@quinnemanuel.com

*Counsel for Defendant First Abu Dhabi Bank USA
N.V.*

17

**CERTIFICATE OF SERVICE**

I hereby certify that on March 16, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which sends electronic notification of such filing to all CM/ECF participants.

/s/ *Juan P. Morillo*
Juan P. Morillo